1UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CBRE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No._____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| CXRE LLC, and | ) |
| Stratiq, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff CBRE, Inc., (hereinafter "Plaintiff" or "CBRE") files this Complaint against Defendants CXRE LLC ("CXRE") and Stratiq, LLC ("Stratiq") (collectively, "Defendants" or "CXRE").

## NATURE OF THIS ACTION

1. This is an action against Defendants CXRE and Stratiq, jointly and severally, for trademark infringement and unfair competition.

2. CBRE markets and sells a comprehensive array of real estate services in connection with its federally-registered "CBRE" marks (the "CBRE Marks").

3. The Defendants market and sell real estate services in connection with their claimed "CXRE" mark (the "CXRE Mark" or the "Infringing Mark"), in a manner that is likely to cause consumer confusion and deceive consumers regarding the source, sponsorship, and/or affiliation of Defendants' real estate services.

4. The Defendants' marketing and sales of real estate services in connection with the CXRE Mark is unlawful and is causing irreparable harm to CBRE and CBRE's CBRE brand.

5.      CBRE brings this action at law and in equity for trademark infringement and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq*. ("Lanham Act") and the common law.   Among other relief, CBRE asks this Court to: (a) permanently enjoin Defendants from marketing or selling real estate services in connection with the CXRE Mark or any other confusingly similar imitation of CBRE's CBRE Marks; (b) award CBRE monetary damages and to treble that award; (c) require Defendants to disgorge all profits from sales of real estate services sold in connection with the CXRE Mark; (d) award CBRE punitive damages; and (e) award CBRE its attorneys' fees, and costs.

## PARTIES

6.      CBRE, Inc., is a Delaware corporation having its principal place of business at 2100 McKinney Avenue, Suite 1250, Dallas, Texas.

7.      Upon information and belief, CXRE LLC, is a Texas limited liability company having its principal place of business at 23122 Valley Ranch Parkway, Porter, Texas.

8.      Upon information and belief, Stratiq, LLC, is a Texas limited liability company having its principal place of business at 23122 Valley Ranch Parkway, Porter, Texas.

## JURISDICTION

9.      This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  Subject matter jurisdiction over CBRE's related common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

10.      This Court has personal jurisdiction over Defendants because, on information and belief, *inter alia*, (a) Defendants are organized and existing under the laws of the State of Texas; (b) Defendants' principal places of business are located within the State of Texas; (c) Defendants have registered agents for service in the State of Texas; (d) Defendants routinely, systematically,

and continuously conduct business in the State of Texas; (e) Defendants have marketed, offered for sale, and/or sold real estate services in connection with the Infringing Mark within the State of Texas; and (f) Defendants have otherwise made or established contacts within the State of Texas sufficient to permit the exercise of personal jurisdiction such that Defendants' due process rights are not offended by this Court's exercise of personal jurisdiction over Defendants.

## VENUE

11.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because Defendants reside in this District, and because a substantial part of the events giving rise to this cause of action occurred in this District.

## STANDING

12.     CBRE has standing to file this action because it is the owner of the CBRE Marks, including the federal trademark registrations for the CBRE Marks, which are infringed by Defendants' marketing and selling of real estate services in connection with the confusingly similar CXRE Mark.

## STATEMENT OF FACTS

**Plaintiff CBRE**

13.     In 1906, the company that is now CBRE began in San Francisco, California.  By the 1940s, it had grown to become one of the largest commercial real estate services companies in the western United States.

14.     Throughout the 1960s and 1970s, CBRE rapidly expanded its real estate services portfolio and geographic reach throughout the United States.

15.     In 2004, shares of CBRE began publicly trading.  In 2006, CBRE was added to the S&P 500.

3

16.     CBRE is now ranked #126 on the *Fortune* 500.  Moreover, CBRE's client base includes over 95 percent of the *Fortune* 100.

17.     For 22 consecutive years, CBRE has been voted the most recognized commercial real estate brand in the Lipsey Company survey.  CBRE recently received the 2022-2023 Brand of the Year Award from *World Branding Awards*.  In addition, in 2022, CBRE received an American Graphic Design Award for Brand & Identity from *Graphic Design USA*.  CBRE also received an American Graphic Design Award for CBRE's "More" Brand Video.

18.     For 16 consecutive years, CBRE has been recognized by the U.S. Environmental Protection Agency as a "Partner of the Year" and has been awarded the ENERGY STAR Sustained Excellence Award.  For 9 consecutive years, CBRE has been recognized by the Dow Jones Sustainability North America Index.

19.     In 2023, *Kiplinger* recognized CBRE as an ESG 20, a top 20 company for meeting ESG challenges.  Moreover, *Barron's* rated CBRE as its #4 sustainable company.  In addition, MSCI recognized CBRE with an ESG AAA rating, the highest score possible.

20.     In 2023, CBRE was recognized as *Fortune* Magazine's Most Admired Real Estate Company, and has received that award 4 of the past 5 years.  *Fortune* also named CBRE as one of America's Most Innovative Companies.  In addition, *Forbes* named CBRE as one of the best large employers in America.

21.     CBRE is the world's largest commercial real estate services and investment firm (based on 2022 revenues).  CBRE and its affiliates employ more than 115,000 employees and serve clients in more than 100 countries.  CBRE also holds the #1 global market position in leasing, property sales, outsourcing, property management and real estate valuation.

**The CBRE Marks**

22.     CBRE owns several incontestable federal trademark registrations for its CBRE Marks covering a broad array of real estate services and related services.  These services, include, but are not limited to: commercial real estate agency, appraisal, brokerage, investment and management; real estate financial analysis and consultation; real estate appraisal and valuation; real estate development; design and construction; property sales; property leasing; property management; strategic advice and execution for property leasing and sales; facilities and project management; financial services in the nature of commercial and multi-family mortgage banking and loan servicing; strategic consulting; and many other real estate services and related services.

23.     CBRE's incontestable federal registrations for its CBRE Marks are summarized below.

| Trademark | Reg. No. / Reg. Date | Services | Date of First Use |
|---|---|---|---|
| **CBRE** <br><br> (for the letters "CBRE" in stylized form) | 4,161,000  /  June 19, 2012 | Capital investment consultation services; financial services in the nature of commercial and multi-family mortgage banking and loan servicing, mortgage brokerage services, investment consultation  and investment management of  funds relating to real estate and real estate companies; residential and commercial real estate agency, appraisal, brokerage, investment and management services; financial analysis and consultation relating  to real estate; financial valuation  of real estate; financial valuation of personal property, namely, equipment; financial portfolio management of residential and commercial real estate; financial research, management and investment in the area of residential and commercial real estate, namely, research in the field of acquisition and disposition of real estate, and assets management, namely, management of assets in the form of real estate property, and investment and management of stock in real estate companies that hold, manage, buy and sell real estate; residential and commercial real estate facilities management, namely, leasing of real property, in Class 36 (U.S. Cls. 100, 101 and 102). | 07/2003 |
| **CBRE** <br><br> (for the letters "CBRE" in stylized form) | 4,161,000  /  June 19, 2012 | Residential and commercial real estate development; residential and commercial real estate construction services, namely, planning, laying out and construction of residential and commercial real estate; residential and commercial real estate construction management services, in Class 37 (U.S. Cls. 100, 103 and 106). | 07/2003 |

| | | | |
|---|---|---|---|
| **CBRE** | 2,925,943 / Feb. 8, 2005 | Capital investment consultation services; financial services in the nature of commercial and multi-family mortgage banking and loan servicing, mortgage brokerage services; investment consultation and investment management of funds relating to real estate and real estate companies; residential and commercial real estate agency, appraisal, brokerage, investment and management services; financial analysis and consultation relating to real estate; financial valuation of real estate; financial valuation of personal property, namely, equipment; financial portfolio management of residential and commercial real estate; financial research, management and investment in the area of residential and commercial real estate, namely, research in the field of acquisition and disposition of real estate, and assets management, namely, management of assets in the form of real estate property, and investment and management of stock in real estate companies that hold, manage, buy and sell real estate; residential and commercial real estate facilities management, namely, leasing of real property, in Class 36 (U.S. Cls. 100, 101 and 102). | 11/2002 |
| **CBRE** | 2,925,952 / Feb. 8, 2005 | Commercial real estate development; commercial real estate construction management services, in Class 37 (U.S. Cls. 100, 103 and 106). | 11/2002 |

24.     CBRE's registrations for these CBRE Marks are valid, enforceable, and legally protectable.  In addition, they have each become incontestable under 15 U.S.C. § 1065.  Current copies of the Trademark Status & Document Retrieval database of the United States Patent and

Trademark Office showing the current status and title of the registration for these CBRE Marks are attached collectively as **Exhibit 1**.

### CBRE's Use of the CBRE Marks

25.     Since at least 2002, CBRE has adopted and continuously used its CBRE Marks in commerce in the United States.

26.     For many years prior to the events giving rise to this Complaint and continuing to the present, CBRE has devoted tremendous resources to advertising and promoting its services under the CBRE Marks.

27.     CBRE's services are advertised on exterior signage, in print media and on the Internet in a manner that is available to the public at large and to commercial real estate professionals and consumers alike.  CBRE's marketing materials for its real estate services and related services display the CBRE Marks.  A few, non-limiting examples of CBRE's use of the CBRE Marks are set forth below.









28.     CBRE markets and sells its real estate services and related services in connection

with the CBRE Marks globally, including throughout the United States and Canada, through its

website (https://www.cbre.com/) as well as through other electronic and social media, podcasts,

print media, television, and signage.  A copy of sample pages printed from CBRE's website is attached as **Exhibit 2**.

29.    CBRE has invested significant time, resources, and financial investment into building the CBRE brand.  CBRE now owns extremely valuable consumer goodwill that is symbolized by the CBRE Marks.

30.    The CBRE Marks are distinctive, arbitrary, fanciful, and entitled to the broadest scope of protection.

31.    Consumers of real estate services are very familiar with the CBRE Marks and their connection to best-in-class services offered by CBRE.

32.    The CBRE Marks have enormous commercial strength, and CBRE enjoys the exclusive right to use the CBRE Marks in the United States in connection with its real estate services and other services.

**Defendants and Their Use of the CXRE Mark**

33.    Defendants CXRE and Stratiq market and sell real estate and related services in the greater Houston area, Dallas, Ft. Worth, San Antonio, and other Texas cities.

34.    According to https://cxre.co/, Defendants offer a range of commercial real estate services including brokerage advisory and management services, REO services, and services concerning sales of pre-distressed and fully distressed property dispositions across various asset types, such as office, retail, industrial, RV park and land.

35.    CXRE and Stratiq market and sell these real estate services in connection with the CXRE Mark.

36.    Upon information and belief, Defendants first used the CXRE Mark in commerce at least sixteen (16) years after CBRE's first use in commerce of its CBRE Marks.

37.     Defendants are currently marketing, offering for sale, and selling, in interstate commerce, real estate services bearing a word mark, CXRE, that is strikingly similar to CBRE's federally-registered CBRE Marks and that is likely to cause consumer confusion.

38.     Upon information and belief, a few, non-limiting examples of Defendants' unauthorized use of the CXRE Mark are set forth below.









39.     Defendants also advertise and promote their real estate services in connection with the CXRE Mark on their website.  A copy of sample pages printed from Defendants' website is attached as **Exhibit 3**.

**Harm to CBRE**

40.     CBRE has used its CBRE Marks in connection with real estate services extensively and continuously before Defendants began marketing, promoting, distributing, offering for sale, or selling real estate services in connection with the CXRE Mark.

41.     Defendants use the CXRE Mark in connection with the promotion and sale of real estate services that directly compete with the real estate services offered by CBRE.

42.     Defendants' CXRE Mark is so substantially similar in sight, sound, meaning, and commercial impression to CBRE's CBRE Marks as to be likely to cause confusion, or to cause mistake, or to deceive.  The prominent portion of each party's respective marks consists of four-letters with only the second letter different.

43.     Defendants are offering and selling real estate services in the same channels of trade to the same consumers bearing the confusingly similar CXRE word mark to CBRE's federally-registered and incontestable CBRE Marks.

44.     Neither of the Defendants nor the CXRE Mark is associated, affiliated, or connected with CBRE, or licensed, authorized, sponsored, endorsed, or approved by CBRE in any way.

45.     Defendants are illegally and unfairly benefitting greatly from misappropriating the CBRE brand and using it in association with Defendants' real estate services.  Defendants are also illegally and unfairly trading on the goodwill established by CBRE in its CBRE Marks.

46.     Defendants' continued marketing, promotion, offer for sale, and sale of real estate services in connection with the CXRE Mark are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others mistakenly attribute the real estate services to CBRE.

47.     The likelihood of confusion, mistake, and deception engendered by Defendants' infringement of CBRE's CBRE Marks is causing irreparable harm to the goodwill symbolized by CBRE's CBRE Marks and the reputation for the quality services that they embody.

48.     Real estate consumers' longstanding association of the CBRE Marks with CBRE will likely be substantially diminished and eroded if Defendants continue to use the CXRE Mark in connection with their competing services.

**Defendants' Willful Misconduct**

49.     Defendants began promoting and selling real estate services in connection with the CXRE Mark well after CBRE had established protectable rights in the CBRE Marks.

50.     Upon information and belief, Defendants knowingly, willfully, intentionally, and maliciously designed and adopted the CXRE Mark as a similar imitation of CBRE's CBRE Marks.

51.     Defendants have knowingly, willfully, intentionally, and maliciously used the imitation CXRE Mark in connection with real estate services that directly overlap with the real estate services provided by CBRE.

52.     In addition, Defendants continue to knowingly, willfully, intentionally, and maliciously use the imitation CXRE Mark in connection with real estate services that directly overlap with the real estate services provided by CBRE.

**The Trademark Trial and Appeal Board Opposition Proceeding**

53.     Defendant Stratiq filed an application with the United States Patent and Trademark Office to register the CXRE Mark (Ser. No. 88/061,523) for "real estate services, namely, rental, brokerage, leasing and management of commercial property offices and office spaces" in Class 36.

54.     CBRE opposed the application in a legal proceeding before the Trademark Trial and Appeal Board ("TTAB").

55.     The TTAB opposition proceeding has not progressed far.  Neither party has taken any depositions.

56.     The TTAB opposition proceeding is currently suspended pending a ruling on a dispositive motion filed by CBRE.  CBRE requested that the Board grant summary judgment on CBRE's claim that the trademark application for the federal registration of the CXRE Mark is void *ab initio* because it was filed by the wrong entity.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT AGAINST DEFENDANTS
### (15 U.S.C. § 1114)

57.     CBRE re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

58.     Defendants' use of a confusingly similar imitation of CBRE's CBRE Marks in a confusingly similar way in connection with competing real estate services is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' real estate services are affiliated with CBRE, associated or connected with CBRE, or have the sponsorship, endorsement, or approval of CBRE.

59.     In connection with Defendants' real estate services, Defendants have used and continue to use a reproduction, counterfeit, copy, or colorable imitation of CBRE's registered trademarks without CBRE's consent.

60.     Defendants' use of the CXRE Mark in connection with real estate services is confusingly similar to CBRE's federally registered CBRE Marks in violation of 15 U.S.C. § 1114.

61.     Defendants' activities are causing, and unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to CBRE's goodwill and reputation as symbolized by CBRE's CBRE Marks, for which CBRE has no adequate remedy at law.

62.     Defendants' actions and awareness of CBRE's CBRE Marks demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with CBRE's CBRE Marks to CBRE's great and irreparable harm.

63.     By virtue of Defendants' conduct, including the advertisement, marketing, promotion, or sale of real estate services in connection with the CXRE Mark, Defendants have willfully violated Section 32 of the Lanham Act, 15 U.S.C. § 1114, and CBRE has suffered and will continue to suffer irreparable damage to its business, reputation, and goodwill and has lost sales and profits it would have made but for Defendants' willful infringement.

64.     Defendants have caused, and are likely to continue causing, substantial injury to the public and to CBRE, and CBRE is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION AGAINST DEFENDANTS
### (15 U.S.C. § 1125(a))

65.     CBRE re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

66.     In connection with Defendants' real estate services, Defendants have used and continue to use a reproduction, counterfeit, copy, or colorable imitation of CBRE's CBRE Marks without CBRE's consent.

67.     Defendants' use of a confusingly similar imitation of CBRE's CBRE Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' real estate services are affiliated, connected, or associated with CBRE, or have the sponsorship, endorsement, or approval of CBRE.

68.     Defendants have made false representations, false descriptions, and false designations of, or in connection with real estate services in violation of 15 U.S.C. § 1125(a).

69.     Defendants' activities have caused, and unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to CBRE's goodwill and reputation as symbolized by CBRE's CBRE Marks, for which CBRE has no adequate remedy at law.

70.     Defendants' actions and awareness of CBRE's CBRE Marks demonstrate an intentional, willful, and malicious intent to unfairly compete with CBRE and trade on the goodwill associated with CBRE's CBRE Marks to CBRE's great and irreparable harm.

71.     By virtue of Defendants' conduct, including the promotion, advertisement, or sale of real estate services in connection with the CXRE Mark, Defendants have willfully violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and CBRE has suffered and will continue to suffer irreparable damage to its business, reputation, and goodwill and has lost sales and profits it would have made but for Defendants' willful unfair competition.

72.     Defendants have caused and are likely to continue causing substantial injury to the public and to CBRE, and CBRE is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT III
### COMMON LAW TRADEMARK INFRINGEMENT AGAINST DEFENDANTS

73.     CBRE re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

74.     Defendants' use of a confusingly similar imitation of CBRE's CBRE Marks in a confusingly similar way in connection with competing real estate services constitutes common law

trademark infringement, and has created and will continue to create, unless restrained by the Court, a likelihood of confusion, deception, and mistake by creating the false and misleading impression that Defendants' real estate services are associated or connected with CBRE, or have the sponsorship, endorsement, or approval of CBRE.

75.     Defendants acted with full knowledge of CBRE's use of, and statutory and common law rights to, the CBRE Marks and without regard to the likelihood of confusion of the public created by Defendants' activities.

76.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with CBRE's CBRE Marks to CBRE's great and irreparable harm.

77.     As a result of Defendants' adoption and use of the infringing CXRE Mark in connection with real estate services, CBRE has been damaged in an amount not yet determined or ascertainable.  At a minimum, however, CBRE is entitled to injunctive relief, to an accounting of Defendants' profits, to damages and to costs.

78.     Further, in light of Defendants' deliberate and malicious use of a confusingly similar imitation of CBRE's CBRE Marks, and the need to deter Defendants from engaging in similar conduct in the future, CBRE additionally is entitled to punitive damages.

<u>**COUNT IV**</u>
<u>**COMMON LAW UNFAIR COMPETITION AGAINST DEFENDANTS**</u>

79.     CBRE re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

80.     Defendants' use of a confusingly similar imitation of CBRE'S CBRE Marks in a confusingly similar way in connection with competing real estate services constitutes common law unfair competition, and has created and will continue to create, unless restrained by the Court, a likelihood of confusion, deception, and mistake by creating the false and misleading impression

that Defendants' real estate services are associated or connected with CBRE, or have the sponsorship, endorsement, or approval of CBRE.

81.     Through their misuse of the CXRE Mark, Defendants are passing off and misrepresenting that their real estate services are emanating from CBRE.

82.     Defendants acted with full knowledge of CBRE's use of, and statutory and common law rights to, the CBRE Marks and without regard to the likelihood of confusion of the public created by Defendants' activities.

83.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with CBRE's CBRE Marks to CBRE's great and irreparable harm.

84.     As a result of Defendants' adoption and use of the infringing CXRE Mark in connection with real estate services, CBRE has been damaged in an amount not yet determined or ascertainable.  At a minimum, however, CBRE is entitled to injunctive relief, to an accounting of Defendants' profits, to damages and to costs.

85.     Further, in light of Defendants' deliberate and malicious use of a confusingly similar imitation of CBRE's CBRE Marks, and the need to deter Defendants from engaging in similar conduct in the future, CBRE additionally is entitled to punitive damages.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, CBRE respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1.     Defendants, jointly and severally, be held liable under each claim of relief set forth against them in this Complaint;

2.      Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined from:

a.      Using the CXRE Mark or any other copy, reproduction, colorable imitation, or simulation of CBRE's CBRE Marks in connection with Defendants' real estate services;

b.      Using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' real estate services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of CBRE's trademarks, trade dresses, names or logos;

c.      Using any trademark, name, logo, design or source designation of any kind in connection with Defendants' real estate services that is likely to cause confusion, mistake, deception, or public misunderstanding that such services are provided by CBRE, or are sponsored or authorized by CBRE, or are in any way connected or related to CBRE; and

d.      Passing off, palming off, or assisting in passing off or palming off Defendants' real estate services as those of CBRE, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

3.      Defendants, jointly and severally, be compelled to pay CBRE monetary damages suffered as a result of Defendants' infringing acts and unfair competition, including the harm to CBRE's reputation and actual damages suffered, as well as lost profits for lost sales resulting from those acts;

4.      Based on Defendants' knowing and intentional use of a confusingly similar imitation of CBRE's CBRE Marks, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

5.      Defendants be required to pay to CBRE the costs and reasonable attorneys' fees incurred by CBRE in this action pursuant to 15 U.S.C. § 1117(a);

6.      Based on Defendants' willful, malicious, and deliberate joint and several infringement of CBRE's CBRE Marks, and to deter such conduct in the future, CBRE be awarded punitive damages;

7.      CBRE be awarded prejudgment and post-judgment interest on all monetary awards; and

8.      CBRE be granted such other and further relief as the Court determines to be just and proper.

Dated: April  24, 2023

By: */s/ Craig S. Krummen*
Craig S. Krummen #0259081
(*Pro Hac Vice forthcoming*)
Stephen R. Baird, #0214024
(*Pro Hac Vice forthcoming*)
GREENBERG TRAURIG, LLP
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 259-9719
Fax: (612) 677-3101
bairds@gtlaw.com
krummenc@gtlaw.com

and

By: */s/ Aimee Housinger*
Aimee Housinger
Texas Bar No. 24083203
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, TX  77002
Phone: 713.374.2570
Fax: 713.374.3505
housingera@gtlaw.com

and

Jeff E. Scott, #126308 (*Pro Hac Vice
forthcoming*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Phone: 310.586.7715
Fax: 310.586.7800
Jeff.Scott@gtlaw.com

*Counsel for Plaintiff*

ACTIVE 686160315v2